IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**LEE EDWARD BROWN**                                                                          **PLAINTIFF**

v.                                    **CASE NO. 2:21-CV-00110-BSM**

**CITY OF DERMOTT,** *et al.*                                                              **DEFENDANTS**

## ORDER

Defendants' motion for judgment on the pleadings and summary judgment [Doc. No. 25] is granted and all of Lee Edward Brown's claims are dismissed with prejudice.

### I.  BACKGROUND

Brown is a former Dermott, Arkansas police officer who was fired on April 19, 2021 after being criminally charged with tampering with physical evidence and abuse of office. Def.'s Statement of Uncontested Material Facts ¶¶ 43, 39, Doc. No. 27 ("SUMF"). Ultimately, the charges were dismissed but he has not been rehired. SUMF ¶ 53; Sec. Am. Compl. ¶¶ 9, 35, Doc. No. 21. Brown is suing the City of Dermott, its police chief, Eric Evans, and another former police officer, Coby Heard, for retaliation in violation of his federal and state constitutional and statutory rights, and for several state torts. Sec. Am. Compl. ¶ 1.

Brown was criminally charged for failing to turn in about $20 in quarters seized from a suspect who robbed a convenience store. Deposition of Jordan Tilley at 9, Doc. No. 33-3; SUMF ¶¶ 34, 35. Brown completed an incident report documenting the theft of money, lottery tickets, and beer, and stating that he observed $60 in cash on the ground and a bag full

of quarters at the suspect's home. SUMF ¶ 19. Video footage from the convenience store shows the suspect grabbing handfuls of coins from a tray next to the cash register and stuffing his pockets with them. *Id.* ¶ 28. Heard went to the suspect's residence after the robbery, collected the bag of quarters, and handed it to Brown. *Id.* ¶¶ 34, 23, 31-32. Evans saw Heard hand the bag of quarters to Brown. *Id.* ¶ 24, 35. Brown completed a property release form documenting his return of two 18-pack containers of beer and $61 dollars in cash to the store owner, but did not mention the quarters. Property Release Form, SUMF Ex. 4, Doc. No. 27-4.

Heard noticed the discrepancy between the incident report and the release form, and he and Evans went to the store owner to investigate. SUMF ¶¶ 21-22, 25. The store owner reported that Brown had told him the quarters were not recovered. *Id.* ¶ 25. Evans referred the file to the prosecuting attorney, who transmitted the case to the Arkansas State Police for investigation. State Police Case File, SUMF Ex. 5 at 1, Doc. No. 27-5. In his interview with the state police investigator, Brown admitted that Heard "probably" handed him a bag of quarters or placed it in his vehicle and that he "could have" used them to wash his car. Transcript of Lee Edward Brown Interview, SUMF Ex. 7 at 14-16, 20, Doc. No. 27-7. Brown did not claim to have returned the quarters and has no recollection of how they "somehow" got back to the store owner. SUMF ¶ 33, Pl.'s Resp. Statement of Facts ¶¶ 23, 30, Doc. No. 34. After completing his investigation, the state police investigator turned over his findings to the prosecuting attorney. SUMF ¶ 36. At some point prior to March 8, 2021, prosecuting attorney Jordan Tilley contacted the store owner, who confirmed that about $20

stolen in the robbery had not been returned. SUMF ¶ 38.

Tilley filed a criminal information against Brown, who was placed on administrative leave with pay. SUMF ¶¶ 40-41. The criminal charges against Brown were widely reported. Aff. of Lee Edward Brown ¶ 12, Doc. No. 33-2. Brown was then terminated, at least in part, based on the pending criminal charges. SUMF ¶ 43; Letter to Plaintiff from Chief Evans, SUMF Ex. 14, Doc. No. 27-14; Deposition of Walter Donald at 6, Doc. No. 33-5. Moreover, Brown has repeatedly stated that the criminal charges were the "only reason" he was terminated. Pl.'s Br. Opp'n Mot. Summ. J. 1, 12, 16, 35, 52, Doc. No. 35; Aff. of Lee Edward Brown ¶ 6. Sometime between March 8, 2021, and December 8, 2022, the store owner informed Tilley that all the stolen property had been returned. SUMF ¶ 53. The record does not show when the quarters were returned. Regardless, Tilley dismissed the charges against Brown. *Id.*

Brown alleges that the accusations of criminal misconduct, the prosecution, and his termination were retaliation for his role in reporting an incident in which Heard allegedly engaged in excessive force against an arrestee named Andre Hawkins. That incident took place on November 20, 2019, when Brown, his brother Lee Van Brown ("Van"), and another Dermott police officer, Tim Martin, witnessed Heard choke Hawkins while he was chained to a pole with a leg iron. SUMF ¶ 2. Each of the three witnesses reported the incident to superior officers. SUMF ¶¶ 4, 5; Aff. of Lee Van Brown at 1, Doc. No. 33-1. Brown and Van also reported the incident to members of the city council, which discussed the incident in November 2019. SUMF ¶ 7; Aff. of Lee Van Brown at 1.

Van was fired from the Dermott Police Department less than thirty days later. Aff. of Lee Van Brown at 1. Heard was fired on June 9, 2020. SUMF ¶ 48; *Hawkins v. Heard*, No. 2:21-cv-00055-BSM (E.D. Ark.) ("*Hawkins v. Heard*"), Pl.'s Resp. Opp'n Mot. Summ. J. Ex. 4 at 4, Doc. No. 27-4. Brown was fired one year and five months after reporting the excessive force incident. SUMF ¶ 43. Martin remained employed by the Dermott Police Department as of March 21, 2023. SUMF ¶ 9; Deposition of Lee Edward Brown at 41, Doc. No. 27-1. While it is not part of the record, judicial notice is taken of *Hawkins v. Heard*, a related civil rights suit Hawkins filed on May 14, 2021 against Heard and the City in relation to the November 20, 2019 choking incident, and the fact that Brown submitted an affidavit in support of Hawkins's claims on September 12, 2022. *See Hawkins v. Heard*, Doc. No. 27-3; *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (observing that courts "may take judicial notice of judicial opinions and public records").

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings are evaluated similarly to Rule 12(b)(6), which permits dismissal when a complaint fails to state a claim upon which relief may be granted. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). To overcome a Rule 12(b)(6) motion, the facts alleged in the complaint must create a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although detailed factual allegations are not required, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient. *Id.*

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III. DISCUSSION

A. Motion for Judgment on the Pleadings

*1. Substantive due process*

Brown's substantive due process claim is dismissed because he has failed to state a claim. Brown alleges that he was deprived of substantive due process when Heard fabricated evidence and the City terminated him in retaliation for reporting Heard's use of excessive force. Brown's claims arising from Heard's pretrial deprivations are, however, governed by the Fourth Amendment's right to be free from illegal search and seizure, not the Fourteenth Amendment's Due Process Clause. *Hoffert v. Westendorf*, 854 F. App'x 93, 96 (8th Cir. 2021); *Johnson v. McCarver*, 942 F.3d 405, 410-11 (8th Cir. 2019). Further, "an employee's occupational liberty is not protected by substantive due process when the

5

employee is discharged by a governmental employer." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). "Rather, any cause of action for the deprivation of occupational liberty [is] confined to a claim under procedural due process." *Id.* at 428 (quoting *Zorzi v. Cnty. of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994)).

### 2. Procedural due process

Brown's procedural due process claim is also dismissed for failure to state a claim. To prevail on this claim, Brown must show that state law gave him a property interest in his job. *Voss v. Hous. Auth. of the City of Magnolia, Ark.*, 917 F.3d 618, 625 (8th Cir. 2019). In Arkansas, employers may generally terminate an at-will employee without cause, with two exceptions: "(1) where an employee relies upon a personnel manual that contains an express provision against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term." *Crawford Cnty. v. Jones*, 232 S.W.3d 433, 438 (Ark. 2006). Brown has provided no facts supporting either exception.

### 3. Other claims

Brown raises several other causes of action in passing that must be dismissed because they fail to state a claim. First, to the extent *Garrity v. New Jersey*, 385 U.S. 493 (1967) even affords a private cause of action, Brown fails to state such a claim because he does not allege that defendants used threats of discharge to obtain incriminatory evidence from him. *Id.* at 499-500. Second, there is no cause of action based on the Fifth Amendment right to be presumed innocent, as Brown appears to acknowledge. Pl.'s Br. Opp'n Mot. Summ. J. 12.

Finally, Brown has failed to allege any factual support for his claim based on the "right to remonstrate" under Article II, Section 22 of the Arkansas Constitution.

    B.    <u>Motion for Summary Judgment</u>

Defendants' motion for summary judgment on Brown's various other claims against the City, Heard individually, and Evans individually and in his official capacity, are granted.

### 1. City of Dermott

Summary judgment is granted on Brown's claims under: (1) the Arkansas Whistleblower Protection Act ("AWBA"); (2) state tort law; and (3) 42 U.S.C. section 1983 and the Arkansas Civil Rights Act ("ACRA").

    a.    Arkansas Whistleblower Protection Act

To prevail on his AWBA claim, Brown must show "that he suffered an adverse action because he engaged or intended to engage in an activity protected under the Act and that such action was unrelated to his own misconduct or poor job performance." *Barrows v. City of Fort Smith*, 360 S.W.3d 117, 124 (Ark. 2010). Brown argues that he was fired for reporting Heard's use of excessive force and participating in a sexual harassment investigation of Heard. He admits that the criminal charges played a role in his termination, however, *see* Aff. of Lee Edward Brown ¶ 6, and his conduct and statements provided probable cause for those charges. *See infra* § B.2.c. Thus, Brown cannot show that his termination was unrelated to his own misconduct.

    b.    Tort Law

Brown alleges the City maliciously prosecuted him and abused process. Summary

judgment is granted on the malicious prosecution claim because the City is immune from that claim. *Culpepper v. Biggers*, 742 F. Supp. 528, 534 (E.D. Ark. 1990) (citing *Autry* v. *Lawrence*, 696 S.W.2d 315, 315-16 (Ark. 1985)). Summary judgment is granted on the abuse of process claim because nothing in the record shows that defendants filed the criminal charges to intimidate Brown from testifying in Hawkins's suit against Heard.

To prevail on his abuse of process claim, Brown must show that "a judicial process [was] used to extort or coerce . . . after its issuance." *Nat'l Bank of Ark. v. River Crossing Partners, LLC*, 385 S.W.3d 754, 761-62 (Ark. 2011); *see Harmon v. Carco Carriage Corp.*, 895 S.W.2d 938, 940 (Ark. 1995) ("It is the purpose for which the process is used, once issued, that is of importance."). Regardless of the role played by Evans and Heard in instigating the criminal investigation, no evidence shows that either Evans or Heard used the pending charges to extort or coerce Brown in any way. In fact, it is undisputed that neither was involved in the decisions to ether continue prosecuting or drop the charges against Brown. SUMF ¶ 57; Pl.'s Resp. Statement of Facts ¶ 57.

    c.    Municipal Liability under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act.

Summary judgment is granted on Brown's municipal liability claims under 42 U.S.C. section 1983 and the ACRA. Section 1983 and ACRA, Arkansas Code Annotated section 16-123-105, claims are analyzed almost identically. *See Brewington v. Keener*, 902 F.3d 796, 800 n.3 (8th Cir. 2018) (citing cases); Ark. Code Ann. § 16-123-105(c). Brown alleges that the City violated his constitutional rights through the acts of Evans and Dermott Mayor

Walter Donald. His allegations against the City center on Evans's statements about Brown's alleged criminal activity, and Brown's subsequent prosecution and termination.

Summary judgment is appropriate because Brown has failed to show that either Donald or Evans acted pursuant to a custom of the City. *See Williams v. City of Sherwood*, 947 F.3d 1107, 1110 (8th Cir. 2020) (affirming dismissal of claims against a municipality because the plaintiff failed to "identify an ordinance or other municipal action whereby the city directs someone to commit an act that is a constitutional violation"). Brown also failed to show that any decision by Donald or Evans constituted the City's official policy. Their decisions to report Brown's perceived wrongdoing and terminate him, respectively, could have constituted official policy only if, under state law, they "possesse[d] final policymaking authority in the area in which the challenged conduct occurred." *Thompson v. Shock*, 852 F.3d 786, 793 (8th Cir. 2017) (citation omitted). Final policymaking authority is distinct from the "discretion to hire and fire." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 660 (8th Cir. 2007).

Dermott is a city of the second class. *See* Ark. Code Ann. § 14-37-105 (second class cities have populations between 500 and 2,500); SUMF ¶ 61 (Dermott's population is 2,021). Thus, the Dermott City Council, not Evans or Donald, was the final policymaker. Ark. Code Ann. § 14-52-102 (in a second class city, the city council makes police policy); *see, e.g.*, *Brinkley v. City of Helena-W. Helena, Ark.*, No. 2:11-CV-00207-SWW, 2014 WL 4164614, at *4 (E.D. Ark. Aug. 21, 2014) (same); *Greer v. City of Warren*, No. 1:10-CV-01065, 2012 WL 1014658, at *13 (W.D. Ark. Mar. 23, 2012) (neither mayor nor police chief were final

9

policymakers for police department personnel matters). And nothing indicates that Brown was accused of crimes, prosecuted, or terminated because of a policy of the City or according to a pervasive custom of the City.

### 2. Individual Capacity Claims

    a.      Qualified immunity

Defendants are immune from the individual capacity claims alleged against them. An officer is entitled to qualified immunity from federal constitutional claims unless (1) "the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right"; and (2) "the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful." *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016). Arkansas qualified immunity doctrine is similar: an officer is entitled to qualified immunity unless the plaintiff "has (1) asserted a statutory or constitutional violation, (2) demonstrated that the statutory or constitutional right is clearly established, and (3) raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right." *Sullivan v. Coney*, 427 S.W.3d 682, 685-86 (Ark. 2013).

    b.      Constitutional malicious prosecution claims

Summary judgment is granted on Brown's malicious prosecution claims under the Fourth Amendment and Article 2, Section 15 of the Arkansas Constitution because Brown was never seized. These provisions mirror each other and are interpreted identically. *See* Ark. Const. Art. 2, § 15; *Mullinax v. Arkansas*, 938 S.W.2d 801, 805 (Ark. 1997) (holding

that Article 2, Section 15 is interpreted "in the same manner as . . . the Fourth Amendment"). These provisions prevent "unreasonable searches and seizures." U.S. Const. amend. IV; Ark. Const. Art. 2, § 15.  Brown was never arrested: the only restrictions on his liberty occurred when Tilley filed the criminal information and Brown was served with a summons to appear in court to answer the charges.  SUMF ¶¶ 40, 52.  These restrictions do not constitute a seizure.  *See Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 651 (8th Cir. 2001) (a summons to appear in court is not a seizure); *Hockbein v. Pine Cnty.*, No. CV 17-5224 (DWF/LIB), 2019 WL 135697, at *3 (D. Minn. Jan. 8, 2019) (same).

    c.      Retaliatory prosecution

Brown alleges that Heard and Evans induced the prosecuting attorney to prosecute him in retaliation for reporting Heard's use of excessive force.  An essential element of Brown's retaliatory prosecution claim is "the absence of probable cause for the underlying criminal charge."  *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1952 (2018).

Summary judgment is granted because, at the time the charging decision was made, there was probable cause to prosecute Brown.  Probable cause exists when the responsible official "has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022).  It is undisputed that, at the time the prosecuting attorney filed charges against Brown, he had the following facts: the robbery suspect was caught on video stuffing his pockets with quarters from the convenience store; Brown documented in the incident report that he observed a bag of quarters in the suspect's

possession when he apprehended the suspect; Heard saw the quarters at the suspect's residence, placed them in an evidence bag, and transferred possession of the bag to Brown; Evans saw the bag and saw it being placed in Brown's possession; Brown filled out a property release form that did not mention the quarters; two police officers reported that the store owner told them the quarters had not been returned; the store owner gave the same story to Tilley; and Brown admitted that the quarters were "probably" placed in his possession and that he "could have" used them to wash his car.

Probable cause in the context of a malicious prosecution claim is determined based on the "facts before the action commenced," not those that subsequently emerge. *Sundeen v. Kroger*, 133 S.W.3d 393, 397 (Ark. 2003); *see Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016) ("[P]robable cause is determined at the moment the arrest was made and any later developed facts are irrelevant to the probable cause analysis for an arrest.") (cleaned up). Therefore, Brown's arguments about what developed after the charges were filed, and whether the state police investigator believed there was probable cause to bring the charges, are unconvincing. The undisputed evidence was sufficient, as a matter of law, to establish probable cause. *See Wood v. City of Bismarck*, No. 1:21-CV-63, 2021 WL 5183860, at *3, 5 (D.N.D. Oct. 15, 2021) (holding that probable cause in a retaliatory prosecution case is a question of law) (citing *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995)).

    d.    First Amendment employment discrimination

Brown alleges that defendants discriminated against him in violation of the First

Amendment by firing him for reporting Heard's use of excessive force. For Brown to prevail on this retaliation claim, he must prove that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against him; and (3) the protected conduct was the but-for cause of the defendant's decision to take the adverse employment action. *See Davison*, 490 F.3d at 655; *Laney v. City of St. Louis, Mo.*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023) (holding that "but-for causation" rather than "a substantial factor" must now be shown).

Summary judgment is granted because Brown has not established that retaliation for his reporting of excessive force was the but-for cause of his termination. First, the pending criminal charges against Brown are an "obvious alternative explanation" for Brown's termination. *See Laney*, 56 F.4th at 1158. In fact, Brown repeatedly stated that the criminal charges were the "only reason" Donald terminated him. Pl.'s Br. Opp'n Mot. Summ. J. 1, 12, 16, 35, 52. Next, no inference of causation can be drawn from the timing of Brown's termination because well over a year elapsed between the time he reported the excessive force and the time he was fired. *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986-87 (8th Cir. 2011) (holding that an inference of causation weakens with the passage of time and "vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months"). Finally, Brown's cat's paw argument fails because it requires Evans's statements about Brown's perceived criminal activity to have caused the prosecution to be commenced, but there is no evidence that the prosecuting attorney decided to bring charges based on anything other than his own independent

13

assessment that probable cause existed. *See Richardson v. Sugg*, 448 F.3d 1046, 1060 (8th Cir. 2006) (rejecting cat's paw theory when decisionmaker conducted "independent review" and had "independent basis for his decision").

    e.    Tort Claims

Summary judgment is granted on Brown's state law tort claims for malicious prosecution, abuse of process, and defamation. Like the City, the individual defendants have immunity with respect to Brown's malicious prosecution claim. *Autry*, 696 S.W.2d at 315-16. Brown's abuse of process claim fails for the reasons stated above in section B.1.b. Brown's defamation claim fails because there is no genuine dispute as to the truth of Heard's statements about Brown's alleged theft. To prevail on that claim, Brown must prove, among other things, that the allegedly defamatory statement was false. *Wirges v. Brewer*, 389 S.W.2d 226, 228 (Ark. 1965) ("Truth, of course, is a complete defense to a charge of defamation."). Not only has Brown failed to show that Heard's statements were false, but Brown's own statements to the state police investigator corroborate Heard's version of events. *Supra* § B.2.c.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion for judgment on the pleadings and summary judgment is granted and all of Brown's claims are dismissed with prejudice.

IT IS SO ORDERED this 27th day of September, 2023.

                                               /s/ Brian S. Miller
                                        UNITED STATES DISTRICT JUDGE